IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    vs.<br><br>TIMOTHY WAYNE ARNETT,<br><br>                Defendant. | No. CR-F-95-5287 OWW<br><br>ORDER DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF GOVERNMENT'S FIREARMS EXPERT JOSEPH T. VORISEK (Doc. 420) |

Defendant moves to preclude the Government's firearms expert, Joseph T. Vorisek, from testifying at trial on the ground that his testimony is neither relevant nor reliable.

This motion is denied. The reasons stated herein are intended to amplify the reasons for denying this motion stated in open court on July 12, 2005.

Defendant's defense to the charges of violation of 18 U.S.C. § 924(c) is that the firearm used during the armed bank robberies is an "antique firearm". 18 U.S.C. § 921(a) provides that the term "firearm" does not include an "antique firearm". Section

1  921(a)(16)(A) defines the term "antique firearm" to mean "any
2  firearm ... manufactured in or before 1898 ...."
3       In moving to preclude Vorisek from testifying at trial,
4  defendant relies on the gatekeeping requirement for the admission
5  of expert testimony set forth in Daubert v. Merrell Dow
6  Pharmaceuticals, Inc., 509 U.S. 579 (1993), General Elec. Co. v.
7  Joiner, 522 U.S. 136 (1997), and Kumho Tire Co. v. Carmichael,
8  526 U.S. 137 (1999).
9       In Daubert, the Supreme Court addressed the standard for
10 admitting expert scientific testimony in federal trial.  The
11 Supreme Court made clear that the Federal Rules of Evidence
12 impose a "gatekeeping" duty on the district court, requiring the
13 district court to screen the proffered evidence to "ensure that
14 any and all scientific testimony or evidence admitted is not only
15 relevant, but reliable."  Daubert, 509 U.S. at 597, 589.  The
16 Supreme Court explained:

> Faced with a proffer of expert scientific
> testimony, ... the trial judge must determine
> at the outset, pursuant to Rule 104(a),
> whether the expert is proposing to testify to
> (1) scientific knowledge that (2) will assist
> the trier of fact to understand or determine
> a fact in issue.  This entails a preliminary
> assessment of whether the reasoning or
> methodology underlying the testimony is
> scientifically valid and of whether that
> reasoning or methodology properly can be
> applied to the facts in issue .... Many
> factors will bear on the inquiry, and we do
> not presume to set out a definitive checklist
> or test.

25 Id. at 592-593.  In Joiner, the Supreme Court clarified that an
26 abuse of discretion standard applies to the trial court's

2

decision to admit or exclude expert testimony under Daubert. Joiner, 522 U.S. at 138-139. Kumho Tire holds that Daubert's "general holding - setting forth the trial judge's general 'gatekeeping' obligation - applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire, 526 U.S. at 141. Kumho Tire held that the trial court "may consider one or more of the specific factors that Daubert mentioned when doing so will help determine that testimony's reliability." Id. The Supreme Court noted that it was '[e]mphasizing the word 'may.'" Id. at 150. The Supreme Court explained that "the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." Id. at 141-142. Quoting Daubert, the Supreme Court reiterated that "the gatekeeping inquiry must be tied to the facts of a particular case." Id. at 150.

In United States v. Alatorre, 222 F.3d 1098 (9th Cir. 2000), the Ninth Circuit held that the district court is not required to hold a separate hearing before trial, as opposed to making an evidentiary determination during trial, in order to fulfill the "gatekeeping" function. However, the Ninth Circuit cautioned:

> Having held that neither the Supreme Court's trilogy of cases nor any of our own compels trial courts to conduct separate, pretrial

3

        hearings to discharge their gatekeeping
duties, we note that holding such hearings -
or at least ensuring an opportunity for voir
dire outside the presence of the jury - may
be appropriate in certain cases.  Trial
courts should be mindful of the difficulties
posed when counsel must explore an expert's
qualifications and the basis for the expert's
opinion in the presence of the jury and,
depending on the circumstances of the case,
should give due consideration to requests
that questioning occur unconstrained by that
presence.  But, in the end, such a
determination is a judgment call best left to
the discretion of the trial court.

222 F.3d at 1105.

    In arguing that Vorisek's expert testimony should be excluded, defendant relies on Vorisek's testimony at defendant's trial in the District of Oregon.  Defendant submits the Declaration of J.B. Wood, who was defendant's expert firearms witness at trial in the District of Oregon.   Defendant's contends that Vorisek should be precluded from testifying at this trial because:

        1)  Vorisek's method of using old catelogues [sic] to determine that this specific .410 shotgun was not made in or before 1898, but rather in 1926, just because this firearm was not advertised in several known catelogues [sic] in 1898 or earlier, inaccurately represents how the firearms expert community would determine the date of manufacture of this particular Crescent Fire Arm [sic], and is nothing but nonsense;

        2)  The firearm expert community would not and has not used his untested mathematical formula to create a serial number range of manufacturing dates for this particular shotgun, or for any other firearm for that matter;

        3)  His description of the mechanical

4

|   |   |
|---|---|
| 1 | workings of firearms, generally, erroneously misrepresents the workings of firearms; |
| 2 | |
| 3 | 4)  His testimony in respect to 'V' spings [sic] and coil springs is completely erroneous, and therefore would not be used by the firearms expert community; |
| 4 | |
| 5 | 5)  His statement that the firearm was made in 1926 is pure speculation, because the date on which this firearm was made is indeterminable .... |
| 6 | |
| 7 | |
| 8 | ... |
| 9 | [V]orisek's methods of assuming that, because a firearm was not advertised in a catlogue [sic] in or before 1898, it does not exist until it is found in a later catalogue, and that he can take the alleged dates that <u>two</u> firearms were manufactured (one of which its date is based on hearsay [sic]), add his own mathematical formula, and then arrive at an accurate date for when some 500,000 firearms were manufactured over a period of a number of years, is an irrelevant and unreliable method of determining the date this particular firearm was made.  His catalogue methods cannot and have not been tested, and there are not any expert standards for such methods.  His mathematical formula cannot and has not been tested for this firearm because there are too few allegedly known specimens and no official Crescent Fire Arms Company records exist, and there are no expert standards for his method.  There is no known rate of error for either method and the potential for error is great.  His catalogue and mathematical formula method, in respect to this particular firearm or any other firearm, has not been subject to peer review, and therefore neither method is generally accepted by the firearm community. |

There is no need for a pretrial hearing under the <u>Daubert</u> standards and that Vorisek will be allowed to testify.  Vorisek is qualified as an expert on firearms.  He has studied shotguns for 40 years, has researched shotguns and written publications

5

about them, has used them and testifies that he understands their workings.  Vorisek's opinion regarding the date of manufacture of the shotgun is based on his historical knowledge, experience and research of shotguns.  Wood's criticisms of Vorisek's testimony, particularly his assertions that the basis of Vorisek's opinions would not be used in the firearms community, are conclusory and unsubstantiated and essentially express a difference of opinion to that of the expert who will testify for the prosecution at the trial.  Defendant has not demonstrated that under the <u>Daubert</u> line of cases that Vorisek's anticipated expert opinion is unreliable.

Dated: _July 14, 2005

/s/ OLIVER W. WANGER

OLIVER W. WANGER

UNITED STATES DISTRICT JUDGE