IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR-F-95-5287 OWW |
|---|---|---|
| | ) | |
| | ) | ORDER DENYING DEFENDANT'S |
| | ) | APPLICATION TO BE FREE FROM |
| Plaintiff, | ) | SHACKLING DURING ALL |
| | ) | JUDICIAL PROCEEDINGS (Doc. |
| vs. | ) | 566) |
| | ) | |
| | ) | |
| TIMOTHY WAYNE ARNETT, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Arnett applies for an order precluding the United States Marshals Service from shackling Arnett in the courtroom during judicial proceedings, including while waiting in the holding cell before entering the courtroom.

Except to the extent of ordering that Arnett's hands and arms be unshackled during proceedings in the courtroom, this motion is DENIED. The reasons stated herein are intended to incorporate and amplify the reasons for denying this motion stated in open court on July 6, 2006.

In making this motion, Arnett refers to *United States v.*

1

*Howard*, 429 F.3d 843 (9th Cir. 2005).[1]  *Howard* involved an interlocutory appeal by criminal defendants challenging a requirement that pretrial detainees making their first appearance before a magistrate judge in the Central District wear leg shackles.  The district-wide shackling policy was implemented by the Marshals Service after consultation with the magistrate judges.  The Ninth Circuit held:

> Shackling a defendant in any judicial proceeding can have negative effects.  The Supreme Court has stated that 'the use of [shackling and restraints] is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.' ... Moreover, the Supreme Court expressed concern that restraints could greatly reduce the defendant's ability to communicate with his counsel ... This court has noted that shackling may confuse and embarrass the defendant, thereby impairing his mental faculties ... Shackling may also cause the defendant physical and emotional pain ....
>
> Defendants contend that the Marshals Service's shackling policy violates their due process rights.  Before a defendant can be shackled in front of a jury, the court must be persuaded by compelling circumstances that some measure is needed to maintain security, and that no less restrictive alternatives are available ... Defendants contend that due process requires that there by no restraining whatsoever without an individualized determination.
>
> We observe, without deciding the issue, that this may go farther than due process

---

[1] Arnett also relies on *United States v. Baker*, 10 F.3d 1274 (9th Cir. 1993), *cert. denied*, 513 U.S. 934 (1994).  *Baker* involved the shackling of a defendant in the courtroom during jury trial, a situation not present here because Arnett was not shackled while in the courtroom during his jury trial.

2

requires. But we do not have to reach this question. The record here gives no justification or describes any circumstances existing district-wide that would support the district requiring such restraint.

At a minimum, due process requires that before there is any district-wide policy affecting all incarcerated defendants whom the government must transport to a first appearance, there must be some justification. The Supreme Court has stated that 'if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.' ... Thus, a pretrial detainee has a substantive due process right against restrictions that amount to punishment.

Cases addressing the substantive due process rights of pretrial detainees typically involve challenges to prison policies ... Courts ordinarily defer to the expert judgments and professional expertise of corrections officials ... Corrections officials must produce at least some evidence that their policies are based on legitimate penological justifications ....

Restrictions on defendants during judicial proceedings, however, are not within the realm of correctional officials. The conduct of judicial proceedings is the domain of the courts. Preservation of dignity and decorum are necessary for the conduct of judicial proceedings that determine issues of liberty and life.

For this reason this court cannot give the government courtroom policies the same degree of deference that it would give to the government prison policies. A court should insist on some showing that a policy impinging on defendants' freedoms and ability to communicate, as well as diminishing the decorum of the court proceedings, is reasonably related to a legitimate goal. By

3

> requiring the government to establish the need for the policy, the court can ensure that the policy does not constitute punishment of pretrial detainees during judicial proceedings.
>
> In this record, there is no explanation of whether a similar shackling policy exists in any other districts. There is no evidence of specific instances that show a need for this shackling policy in the Central District. Rather, the only support for the policy is the conclusory declaration of a single representative of the Marshals Service that the policy is necessary because of safety concerns and financial limitations.
>
> As we have seen, the record contains no evidence of safety concerns necessitating this policy in this district. There is no basis on which we can assume the benefits of the policy outweigh the costs and the disadvantages. The Supreme Court has already held that financial concerns should not be a justification for cutting back on the constitutional rights of criminal defendants ....
>
> There may well be good reasons for the policy, but we don't yet know what they are ... We order the existing shackling policy rescinded, but we do not preclude reinstatement of a similar policy upon a showing of adequate justification. This, at a minimum, means a showing sufficient to support a reasoned determination that the policy is justified on the basis of past experiences or present circumstances in the Central District.

429 F.3d at 851-852.

Relying on the analysis in *Howard*, Arnett argues that his circumstances are different because he is representing himself. Arnett contends:

> [H]is ability to communicate to the court with an unfettered, fresh, and clear mind is of paramount importance to his due process

4

| | |
|---|---|
|1| |
|2| |
|3| |
|4| |

>               and meaningful acess [sic] constitutional
>               rights.  Physical restraints certainly impair
>               mental faculties where, as here, the United
>               States Marshals Service restrain defendant
>               with handcuffs attached to a bellyband, and
>               leg-irons around 7:00 a.m. on the morning of
>               court, transport him from the Fresno County
>               Jail to a holding cell at the courthouse and
>               leave them on continuously during the entire
>               period of time he is confined there, through
>               and including his appearance in the courtroom
>               to finally represent himself in an afternoon
>               appearance ... By then, defendant is
>               completely worn down and exhausted from being
>               physically constrained in a crowded holding
>               cell with numerous other federal inmates.
>               And by the time he finally does enter the
>               courtroom to represent himself it is hard to
>               submit his arguments in an effective manner.
>               Plain and simply put, the Marshals
>               unwarranted and oppressive physical retraints
>               [sic] adversely effect defendant's ability to
>               adequately, effectively and meaningfully
>               represent himself.

Arnett further contends that the dignity and decorum of the judicial proceedings are adversely affected by "the appearance in the courtroom of a *pro se* criminal defendant standing at the podium or table presenting his defense, while physically retrained [sic] with handcuffs attached to a bellyband and leg-irons." Arnett asserts that the "Court can only speculate as to what a spectator in the courtroom must think of such a sight, where (1) the defendant is presumed to be innocent until found guilty by 12 of his peers; and (2) where the Court has not determined on the record that it is persuaded that 'some measure is needed to maintain courtroom security.' ...." Arnett contends that over the past ten years he has appeared in court representing himself without any security incidents, and that his

5

1  behavior in the two trials establishes that "physical retraints
2  [sic] are unwarranted because he had no restraints on him during
3  the entire time."  Arnett therefore requests that he be free from
4  all physical restraints "from the moment he is secure in the
5  holding cell at the courthouse until he has finished his
6  appearance before court" unless the Marshals "can make a showing
7  that satisfies the Court that impinging on defendant's freedom
8  and ability to communicate, as well as diminishing the decorum of
9  the court proceedings, is reasonably related to a legitimate
10 security goal."  Arnett also requests that he not be transported
11 from the Fresno County Jail to the courtroom holding cell "until
12 a time reasonably close and necessary to assure his appearance at
13 the calendared afternoon time."  Arnett asserts that the Marshals
14 Service, since the new courthouse opened, "are picking up all
15 inmates that are calendared for the day at 7:00 a.m. and making
16 them stay confined in <u>one</u> crowded holding cell all day long until
17 all the prisoners have appeared in the courtroom, then they
18 return all together to the Fresno County Jail."  Arnett contends
19 that the Marshals used to make two transports from the jail for
20 the morning criminal calendars and then for the afternoon
21 criminal calendars.  Arnett contends that "[a]ny argument that
22 the marshals do not have the financial resources to maintain the
23 manpower to do so now is unavailing for this reason, and because
24 'financial concerns should not be a justification for cutting
25 back on the constitutional rights of criminal defendants.' ...."
26       As a result of the *Howard* decision, the Eastern District of

California adopted General Order No. 441 on February 15, 2006. General Order No. 441 provides in pertinent part:

> In long cause proceedings [a proceeding that is expected to last at least 30 minutes ... and where the defendant will be seated at the defense table except when testifying], in which only a single defendant is appearing, a detained defendant shall be fully shackled [meaning leg shackles, waist chains, and handcuffs] except that the defendant shall be permitted the unshackled use of the defendant's writing hand - unless the Marshal recommends full shackling for particularized reasons, and the presiding judge agrees - and shall remain seated at the defense table except when giving testimony.

In support of General Order No. 441, the Eastern District of California made specific findings set forth in the General Order. In pertinent part, these findings are:

> 1. The United States Marshal for the Eastern District of California, who is responsible for the security of the courtroom, recommends full shackling of all detained defendants at all proceedings in order to assure the safety of all persons in the courtroom, including the judge, lawyers, interpreters, court personnel, defendants, and the public. The Marshal's reasons are provided in the attached memorandum. The court has accepted the recommendation of the Marshal with the exception of ... long cause proceedings ... At long cause proceedings, with a single defendant who is seated, the court considers that the safety considerations are outweighed by the defendant's need to take notes, examine exhibits, and communicate with counsel. In addition, a seated person presents less of a security threat. In ... long cause matters the court will permit a single detained defendant to have one hand and arm unshackled. This permits freedom of movement. As to sentencings, the court accepts the recommendation of the Marshal that defendants be fully shackled. At this stage of the proceedings, the defendant

>stands convicted.  There is also the risk of outbursts by defendants or family members during sentencings.
>
>2.   The Eastern District of California has a heavy criminal caseload.  Criminal calendars frequently are lengthy and require the movement of many detained prisoners in and out of the courtroom.
>
>3.   Most criminal proceedings are brief such that the time in which a defendant is before the court fully shackled is minimal.
>
>4.   The alternatives to full shackling are not practical or would merely substitute the presence of much greater numbers of deputy marshals for physical restraints, with no significant increase in decorum or dignity for the defendant.  The resources of the Marshal service [sic] in this district are finite.  Unshackling all defendants for all proceedings would cause very considerable delays and would disrupt the operation not just of the calendar court but potentially of all other courtrooms due to the necessity to draw deputy marshal's [sic] from other courtrooms to provide the additional deputies necessary to assure security when defendants are unshackled.

The attached memorandum from the Marshals Service comments in pertinent part:

>Restraining prisoners is also for their safety, though not an assurance.[6]  As the number of defendants increase and the length of court calendars increases defendants remain in holding cells longer.[7]  We believe boredom and extended interaction between prisoners is a huge factor for incidences in the holding cells.[8]  This may not specifically affect the court proceedings but it does contribute to the prisoners' overall demeanor.
>
>...
>
>[6]In February 2004 (Sacramento), Vincent Jackson was able to remove his wrist chain

8

>          while handcuffed to it and beat another
>          prisoner in the holding cell behind Judge
>          Levi's courtroom.
>
>     [7]In August 2005 (Fresno), a prisoner in a
>          holding cell had his handcuffs and waist
>          chain removed to use the toilet.  The
>          prisoner then assaulted another prisoner who
>          had slipped one hand out of his handcuff.
>          They were physically restrained and
>          separated.
>
>     [8]In mid 1990 (Sacramento), an argument broke
>          out among ten prisoners in the holding cell
>          behind Judge Burrell's courtroom.  Prisoner
>          Gallant was pepper sprayed by deputies
>          because he continued to attack and head butt
>          other prisoners.

The Eastern District of California in Fresno has at present two district court judges hearing criminal cases and three magistrate judges who hear preliminary matters in criminal cases such as arraignments and detention hearings.  At present, there are 565 active criminal cases pending in the Eastern District in Fresno, of which 288 are assigned to Judge Wanger and 277 are assigned to Judge Ishii.  As an example of the impact of this caseload on the U.S. Marshals Service, the Marshals were required to transport 19 in custody defendants for Judge Wanger's criminal calendar on July 6, 2006.  Deputy Marshal Moscovic testified at the hearing that in custody defendants scheduled for proceedings during the afternoon criminal calenders are picked up for transport at approximately 10:30 a.m.  Transport for the morning criminal calendars takes place earlier.  Deputy Moscovic further testified that there are only eight deputies available to handle all Marshal duties for the Eastern District in Fresno, which

1  includes transporting defendants and/or prisoners between 20
2  facilities for all criminal proceedings before the district court
3  judges and the magistrate judges.  Deputy Moscovic testified that
4  defendants and prisoners awaiting court appearances are shackled
5  while being transported and in the holding cells and in the
6  courtrooms other than at trial for their own safety as well as
7  the safety of the deputies and the public.  Deputy Moscovic also
8  testified that the Bureau of Prisons considers Arnett to be a
9  flight risk because Arnett has attempted to escape in the past
10 and has stated that he will not serve a long time.

11     Although Arnett is representing himself, he is not a
12 pretrial detainee during these proceedings.  He stands convicted
13 of seven counts of armed bank robbery in this court as well as
14 one count of armed bank robbery and one count of use of a firearm
15 during a crime of violence in the District of Oregon.  In
16 addition, he stands convicted as of August 10, 2005 of seven
17 counts of use a firearm during a crime of violence in this court.
18 Not only did he commit numerous violent crimes but he faces the
19 possibility of a very lengthy sentence.  Furthermore, Arnett has
20 been allowed to appear in court proceedings with some of the arm
21 restraints removed in order to facilitate his self-
22 representation.

23     The record supports the implementation of General Order No.
24 441 with respect to Arnett while being transported and while
25 being detained in the holding cell before court appearances.
26 Arnett's arm and hand restraints were removed for the hearing on

10

July 6, 2006 and Arnett has made no specific showing that the shackling implemented in the past has impaired his ability to represent himself in court proceedings.

Arnett has no constitutional basis for complaining about the length of confinement in the courthouse holding cells while awaiting a court appearance. In *Romine v. County of Clark*, 2000 WL 733726 (9th Cir. 2000), the Ninth Circuit affirmed summary judgment for defendants in an action under 42 U.S.C. § 1983 wherein one of the plaintiff's complaints was that he was detained for two days in an overcrowded holding cell:

> The district court properly determined that Romaine's constitutional rights were not violated as a result of his temporary confinement in the holdings cell of the Clark County Detention Center ... *See Bell v. Wolfish*, 441 U.S. 520, 539 n.21 (1979)(noting that a de minimus level of imposition does not rise to a constitutional violation).

Here, Arnett's confinement in the holding cells while awaiting a court appearance is a de minimus level of imposition. On July 6, 2006, Arnett was transported around 11:00 a.m. for a 1:30 p.m. Court appearance. This period was not unreasonable. Mr. Arnett stated in open court that he did not expect not to be shackled while transported to and from the courtroom.

ACCORDINGLY, as set forth above:

1.  Defendant's Application To Be Free From Shackling During All Judicial Proceedings (Doc. 566) is DENIED.

11

                    IT IS SO ORDERED.

**Dated:**   **July 16, 2006**                    **/s/ Oliver W. Wanger**
emm0d6                                             UNITED STATES DISTRICT JUDGE