1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT FOR THE

7                    EASTERN DISTRICT OF CALIFORNIA

8

9   UNITED STATES OF AMERICA,      )        No. CR-F-95-5287 OWW
                                   )
10                                 )        ORDER DENYING DEFENDANT'S
                                   )        MOTION FOR A SPEEDY TRIAL OR
11               Plaintiff,        )        TO DISMISS INDICTMENT (Doc.
                                   )        524), REQUEST FOR DISCOVERY
12         vs.                     )        (Doc. 564), REQUESTS FOR
                                   )        SUBPOENAS (Docs. 523, 575,
13                                 )        577), AND APPLICATION TO
    TIMOTHY WAYNE ARNETT,          )        PUBLISH DECISION (Doc. 536)
14                                 )
                                   )
15               Defendant.        )
                                   )
16  _____)

17      By motion filed on December 5, 2005, defendant Timothy Wayne

18  Arnett, proceeding *in pro per*, moves to dismiss the Indictment

19  charging him with seven counts of use of a firearm during a crime

20  of violence in violation of 18 U.S.C. § 924(c) on the ground that

21  he was not tried within seventy days of the issuance of the

22  mandate on September 23, 2005 by Deputy Clerk Candace Pemillion

23  of the Ninth Circuit Court of Appeals.[1]  Defendant filed a motion

24  _____

25      [1]Although the mandate was issued by the Clerk on September 23,
    2005, it was not filed with this court until September 28, 2005.
26  However, for purposes of 18 U.S.C. § 3161(e), the 70-day clock
    begins to run on the date the mandate is issued and not on the date

                                    1

for discovery in connection with this motion to dismiss.  Arnett

has also applied for the issuance of personal subpoenas and/or

subpoenas duces tecum to Ninth Circuit Deputy Clerk Pemillion,

Ninth Circuit Deputy Appellate Clerk Wayne Price, and to David

Porter, Arnett's attorney on appeal.  Arnett requests an

evidentiary hearing with regard to this motion.  Finally, Arnett

moves to the court to publish its decision resolving this motion

to dismiss in the Federal Supplement 2nd.

These motions are DENIED.  The reasons stated herein are

intended to incorporate and amplify the reasons for denying these

motions stated in open court on July 6 and 20, 2006.

**A.  <u>Background</u>**.

Arnett was convicted in the Eastern District of California

of seven counts of armed bank robbery and seven counts of

violation of Section 924(c) in 1998.  Arnett appealed to the

Ninth Circuit, which appeal was assigned Case No. 00-10170.[2]

According to the Ninth Circuit's docket the appeal was submitted

to Judges Trott, Rymer and Tallman on February 13, 2003.[3]  On

April 24, 2003, the three-judge panel filed an unpublished

_____

the district court receives it.  *United States v. Lloyd*, 125 F.3d
1263, 1265 n.1 (9th Cir. 1997).

[2]Arnett's appeal in this case was consolidated by the Ninth
Circuit with his appeal in No. 00-30189, which involved his appeal
from his conviction of armed bank robbery and violation of Section
924(c) in the District of Oregon in 1996.

[3]Judicial notice is taken of the Ninth Circuit's docket.  A
court is permitted to take judicial notice of court records in
another case, including court records available to the public
through the PACER system via the internet.  *See United States v.
Howard*, 381 F.3d 873, 876 n. 1 (9th Cir.2004); *Jacobsen v.
Schwarzenegger*, 357 F.Supp.2d 1198, 1207 (C.D.Cal.2004).

opinion affirming Arnett's convictions on all counts.  Arnett

then filed a petition for rehearing *en banc*, which petition was

granted by Chief Judge Schroeder on October 3, 2002.  By Order

filed on December 24, 2003, the Ninth Circuit affirmed all

Arnett's bank robbery convictions but reversed his convictions of

violation of Section 924(c) and remanded those convictions for

retrial.  However, for purposes of the instant motion, it must be

noted that the Ninth Circuit actually issued a Memorandum and an

Order on December 24, 2003.  The Memorandum affirms Arnett's

convictions of armed bank robbery and notes: "In a separate

published opinion filed contemporaneously with this disposition,

we address Arnett's argument that the district court erred in

applying collateral estoppel to bar relitigation of Arnett's

affirmative defense." *See United States v. Arnett*, 84 Fed.Appx.

939, 2003 WL 23095754 (9th Cir. 2003).  The Order filed on

December 24, 2003 states:

> On November 25, 2003, only two weeks before
> these eight-year old cases were scheduled for
> oral argument before this en banc court, the
> United States filed a supplemental brief in
> which it confessed error on the collateral
> estoppel issue:
>
> > In federal criminal trials, the
> > United States may not use
> > collateral estoppel to establish,
> > as a matter of law, an element of
> > an offense or to conclusively rebut
> > an affirmative defense on which the
> > Government bears the burden of
> > proof beyond a reasonable doubt.
>
> In our Case No. 00-10170, the confession of
> error affects each of the counts charging use
> of a firearm during a crime of violence,

3

which are Counts 2, 4, 6, 8, 10, 12 and 14.
The convictions on those counts are REVERSED,
and the case is REMANDED for retrial or other
appropriate disposition of those counts.  The
convictions on Counts 1, 3, 5, 7, 9, 11, 13
and 15 are AFFIRMED.  The sentence imposed in
the judgment filed on March 29, 2000 is
VACATED pending further proceedings on
remand.

The memorandum disposition filed on April 24,
2003, which was withdrawn by this court's
order of October 3, 2003, is hereby
reinstated.  Any sentencing issues raised
under *Apprendi v. New Jersey* ..., may be
considered as necessary on remand.

According to the Ninth Circuit's docket, Arnett filed a petition

for rehearing and rehearing *en banc* on January 7, 2004.  By Order

filed on February 2, 2004, Arnett's petition was denied.  On

February 6, 2004, Arnett filed a motion to stay the mandate.  On

February 10, 2004, according to the Ninth Circuit's docket, the

mandate was issued.  On February 10, 2004, the Deputy Clerk

recalled the mandate as issued in error.[4]  On February 11, 2004,

Arnett's motion to stay the mandate was granted.  On May 5, 2004,

Arnett filed a petition for writ of certiorari with the Supreme

Court.  On June 7, 2004, the Supreme Court denied the petition,

which denial is recorded on the Ninth Circuit's docket on June

14, 2004, stating: "Filed Supreme Court order, certiorari denied

on 6/7/04."  On June 21, 2004, Arnett filed an application in the

Ninth Circuit to stay the mandate until the Supreme Court decided

his petition for rehearing.  On June 29, 2004, the Ninth

---

[4]The mandate was filed with this court on February 12, 2004
(Doc. 279).  The order recalling the mandate was filed with this
court on February 13, 2004 (Doc. 280).

4

Circuit's docket states: "Received letter from the Supreme Court dated 6/23/04 re: granting aplt an ext of time to file a petition for rehearing to and including July 15, 2004."  The following is then noticed on the Ninth Circuit's docket in pertinent part:

> 8/6/04 Filed order (Stephen S. TROTT, Pamela A. RYMER, Richard C. TALLMAN,):  On 6/7/04, the USSC denied cert in this case.  The stay of the mandate issued on 2/11/04 is lifted.  The aplt's motion to stay the mandate pending the USSC's decision on his petition for rehearing is denied.  The mandate shall issue forthwith. in 00-10170, 0030189 ....
>
> 8/6/04 MANDATE ISSUED [00-10170, 00-30189] ....
>
> 8/9/04 Received letter from the Supreme Court dated 8/2/04 re: order denying petition for rehearing ....
>
> 9/23/05 AMENDED MANDATE ISSUED, DC called and never received the mandate. [00-10170] ....

The mandate issued by the Ninth Circuit on September 23, 2005 and filed with this court on September 28, 2005 states in pertinent part:

> On consideration where, it is now ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and hereby is **AFFIRMED.**
>
> **Filed and entered 12/24/03**

Attached is a copy of the Memorandum; the mandate does not include a copy of the Order.  As noted above, it is the Order that reverses and remands Arnett's Section 924(c) convictions in this court.[5]

---

[5]At the hearing on July 6, 2006, Arnett represented that he telephoned Candy Pemillion of the Ninth Circuit's Clerk's Office to

In the meantime, on February 2, 2004, AUSA Rice sent a memorandum to Judge Coyle's courtroom deputy, advising that the Ninth Circuit had reversed and remanded the Section 924(c) counts, and requesting that the action be placed on Judge Coyle's February 17, 2004 calendar for appointment of counsel or determination whether Arnett would exercise his right to self-representation (Doc. 276).   On February 11, 2004. Arnett, acting *in pro per*, filed a Motion to Dismiss Indictment Based on Double Jeopardy Clause of the United States Constitution (Doc. 277). Federal Defender David Porter, who had represented Arnett on appeal, filed on February 12, 2004 an application to remove the requested status conference from Judge Coyle's calendar and to return Arnett to federal prison because the mandate had not issued, thereby depriving this court of jurisdiction (Doc.  278). By Order filed on February 13, 2004, Judge Coyle vacated the status conference and ordered Arnett returned to federal prison because the Ninth Circuit had stayed issuance of the mandate (Doc. 281).   On May 20, 2004, Arnett, acting *in pro per*, filed an

---

advise her that the mandate issued on September 23, 2005 was incorrect and that Ms. Pemillion responded that the mandate she issued was "fine".  Arnett further represented that the mandate issued on September 23, 2005 was misdocketed by the Eastern District of California Clerk's Office in Arnett's 2004 appeal. Arnett contended that this is evidence of a conspiracy to cover-up error by the Clerk's Office.  Ms. Pemillion's alleged opinion about the efficacy of the mandate issued on September 23, 2005 is irrelevant and cannot provide the basis for any estoppel.  Arnett's assertion that the mandate was misdocketed by District Clerk's Office is not supported by the docket in this criminal action.  His suggestion of conspiracy is also unsupported by the record in this action and is based solely on speculation.

"Amended Motion to Dismiss the Indictment Based on the Double Jeopardy Clause of the United States Constitution; or Alternatively, Transfer Entire Case to the District of Oregon" and an "Application to Remain at the Federal Prison in Lompoc, California Until the Final Outcome of His Motion to Dismiss the Indictment, or Transfer the Case" (Docs. 283, 284).  By Order filed on May 24, 2004, Judge Coyle allowed these motions to be filed, but, noting that the mandate had not issued and that Arnett had petitioned the Supreme Court for certiorari, ordered Arnett to file a notice of hearing with respect to these motions "if and when the Supreme Court denies defendant's petition for certiorari".  (Doc. 285).  On July 2, 2004, Arnett, acting <u>in pro per</u>, filed an "Application for an Amended Order Directing Defendant to File Notice of Hearing Date for Motions" wherein Arnett requested that the court extend the time within which he is required to filed the notice setting the motions for hearing until at least three weeks following the denial of the petition for rehearing by the Supreme Court and the issuance of the mandate by the Ninth Circuit (Doc. 287).  Judge Coyle granted this application by Order filed on July 15, 2004 (Doc. 289). Also on July 6, 2004, Arnett, acting *in pro per*, filed an "Application for an Order Stating That His Sentence in This Case Has Been Vacated by the Ninth Circuit Court of Appeals" (Doc. 288).  By Order filed on July 15, 2004, Judge Coyle denied Arnett's application in part because the Ninth Circuit had not yet issued the mandate (Doc. 290).  On August 23, 2004, Arnett,

acting *in pro per*, filed a "Notice of Defendant's Application to Remain at the Federal Prison in Lompoc, California Until the Final Outcome is Decided of His Motion to Dismiss the Indictment, or Transfer the Case to the District of Oregon; and To Exclude Time Under the Speedy Trial Act" (Doc. 293).[6]  In this pleading, Arnett states in pertinent part:

> On August 6, 2004, the Court of Appeals issued its mandate in respect to defendant's appeal.  In compliance with the Court's Order, defendant serves notice setting the motion [to dismiss or transfer the case] for hearing on or about Monday, September 20, 2004 at 9:00 a.m. in Courtroom One, before Honorable District Court Judge Robert E. Coyle.

By Order filed on September 17, 2004, Judge Coyle continued the hearing on Arnett's motions to September 27, 2004, in part because "[t]he Ninth Circuit has not yet issued the mandate to this court." (Doc. 296).  Augusta Giffen, law clerk to Judge Coyle, and Linda Lucas, courtroom deputy to Judge Coyle, testified at the hearing on July 6, 2006 that a telephone call was placed by Ms. Lucas to the Ninth Circuit's Clerk's Office in approximately September 2004 inquiring whether the mandate had issued.  Ms. Lucas was informed by the Clerk's Office that the mandate had issued.

---

[6]In a declaration filed on February 2, 2006 (Doc. 537), Arnett avers that the statement quoted in Doc. 239 "is the direct result of a phone call made by me from USP Lompoc to the Clerks office for the ... Ninth Circuit, where the clerk merely checked the computer read out of my appellate docket, and then told me according to this, the mandate issued on August 6, 2004" and that he "did not write the statement ... because I had been served with the Court of Appeals mandate ...."

8

In support of his motion to dismiss the Indictment because of noncompliance with the Speedy Trial Act, Arnett has filed a declaration in which he avers in pertinent part:

> 1) On September 21, 2005, at approximately 9:10 a.m., I called the Ninth Circuit Court of Appeals ... and spoke to Deputy Clerk Candace Pemillion about the status of my pending appeal:  USCA No.: 04-10575 [Arnett's appeal to the Ninth Circuit from Judge Coyle's denial of his motion to dismiss the indictment on double jeopardy grounds]. During our conversation, she mentioned that the Clerk of the Court for the District of Oregon in Eugene had recently contacted her in respect to an inquiry about the mandates in my prior appeals: *USA v. Arnett*, USCA Nos.: 00-10170 and 00-30189.  She said there was some confusion and asked me for clarification since I was on the phone. After I explained to her that they had the wrong appellate case number for the appeal from Oregon, she said she would call the Clerk in the District of Oregon and then she would write back to me and tell me what conclusions they had reached, and what action they took;
>
> 2) In response to this conversation, on September 29, 2005, I received a legal mail envelope from Deputy Clerk Pemillion.  The envelope contained two cover letters and a 'Certified copy of the Decree of the Court' - mandates - in respect to my prior consolidated appeals: *USA v. Arnett*, USCA Nos. 00-10170 and 00-30189.  In addition, there was a cover address sheet which contained a note from Deputy Clerk Pemillion to myself.  This note stated: 'Never issued 8/6/04 when they should have C'. ...;
>
> 3) As soon as I had access again to a phone in the Fresno County Jail's Law Library, I tried to call Deputy Clerk Pemillion to discuss these matters and clarify what happened in respect to the issuance of the mandates.  I was not able to reach her by phone until October 5, 2005 at around 11:00 a.m. to 11:30 a.m.. [sic] At this time we

9

discussed the question of when the mandates were issued for USCA Nos.: 00-10170 and 00-30189;

4) She told me that the appellate docket entrys [sic] for these appeals wrongly stated that the mandates had issued.  She further stated that she had actually checked the official appellate files in respect to these appeals and no mandates were actually issued on August 4, 2004, as the appellate docket stated.  She stated that one of the other appellate deputy clerks had entered on the appellate docket that the mandates had issued, when in fact they never were issued. She explained that this is why I had just received the mandates for the first time, and would further explain why the mandates were never issued, received and docketed until just recently in both of my criminal cases in the Eastern District of California, Case No. 95-CR-F-5287 OWW, and in the District of Oregon (Eugene), Case No. 95-CR-60120 MRH. Moreover, she stated that their confusion in the Clerk's Office is reflected on the Ninth Circuit's appellate docket in USCA NO.:  00-30189 [appeal from the District of Oregon] at entries #114 and #115, where the mandate was issued on two different dates (9/21/05 and 9/23/05);

5) When I asked her on what date the mandates were actually 'issued' in respect to my consolidated appeals, USCA Nos.: 00-10170 and 00-30189, Deputy Clerk Pemillion told me that they were 'issued' on September 23, 2005, and not on August 4, 2004, as is reflected in the United States Court of Appeals for the Ninth Circuit's appellate dockets for these consolidated appeals;

6) The first time I ever received the mandates from the Ninth Circuit Court of Appeals, in respect to USCA Nos.: 00-10170 and 00-30189, was on September 29, 2005. This was also the first time I ever received and was able to see my appellate dockets for these two appeals, because Deputy Clerk Pemillion also included a copy of these dockets with the mandates when she sent them to me; and

10

7) On the morning of October 20, 2005, I called Deputy Clerk Pemillion once again from the fresno [sic] County Jail's Law Library. During our conversation she told me that she was the clerk that 'issued' both of the mandates for USCA Nos.: 00-10170 and 00-30189 on September 23, 2005.  She further stated that before she issued the mandates, she had called the Clerk's office in the United States District Court in Fresno ..., and told the clerk that the mandate had never issued on August 6, 2004, and that she was going to issue the mandate that same day.  The district court clerk replied that she was familiar with my case, knew who I was and explained that I had already been retried again, after my successful appeal;

8) Since I had never received the mandate from the Court of Appeals or the District Court, I wondered why I had not.  I wanted to investigate this earlier, but could not.  Nor did I have another procedural motion that I could filed to request what I had already asked for in my earlier motion - the basic tools of an adequate defense;

9) The living conditions in the Fresno County Jail are as bad as it can get, especially for someone who is representing himself in court. The housing units are open all day and night (except at court time).  Thus, prisoners are screaming, yelling and slamming dominoes at all times.  There are 2 TVs, one ran [sic] by the Bulldog gang and one by the Blacks.  Each group tends to put their TV on a different channel and then turn it up to try and drown out the other TV.  All this does is make for a loud and unintelligent blarring [sic] noise that permeates right into the cells.  The lights are on 24 hours a day in the dayroom, which shines through the door into the cell. In the cell there is a 4 foot flourescent [sic] light that is turned on for hours at a time by the guards at count times and a [sic] breakfast.  Breakfast and lunch are served at the same time - 4:00 a.m.. [sic] Because of all of the noise, lights and the 4:00 a.m. breakfast/lunch, I have not slept 8 hours straight at one time in the entire 14 months that I have been in the Fresno County Jail.

11

In fact, because of these living conditions,
stress and the anxiety of representing myself
and trial, I have lost 40 pounds since I came
to the Jail.  In addition, each cell is a
three-man cell.  Prior to trial and during
trial my two cellmates were constantly
running in and out of the cell, and smoking
crack-cocaine and snorting meth.  I had to
labor under all of these conditions, and
more, while I was preparing for and during
trial in August of 2005;

10) My family, which lives in Modesto, have
had to suffer again the embarrassment, and
harrassment [sic] by others, because of my
August 2005 trial and conviction because it
was reported in the Modesto Bee newspaper
..., not to mention their anxiety, wondering
whether they would ever get their dad back
again;

...

12) I have exercised due diligence to the
best of my abilities to submit the instant
motion in light of the limited access I have
to the Jail's Law Library, law books,
typewriter, and a copier.

Arnett's motion to dismiss for violation of the Speedy Trial
Act was set to be heard on February 6, 2006.  Arnett requested a
continuance on February 2, 2006 of all pending matters which was
granted by Order filed on February 3, 2006, the hearing date was
then set for April 3, 2006.  On February 27, 2006, Arnett filed a
motion to stay all further proceedings in this action (doc. 551)
pending resolution of his "Urgent Motion Under Circuit Rule 27-
3(b)" filed in the Ninth Circuit in USCA No.: 00-10170.  In the
"Urgent Motion" filed with the Ninth Circuit Arnett contended
that this case involves extraordinary and unusual circumstances
in respect to the timing and accuracy of the mandate sufficient

12

1  to justify modifying or recalling the mandate to protect the

2  integrity of the Ninth Circuit's processes; that the Double

3  Jeopardy Clause requires recalling the mandate in order to

4  prevent an injustice;[7] that intervening changes in the law after

5  the Supreme Court denied certiorari but before the mandate issued

6  warrant recalling the mandate and amending the *en banc* opinion.

7  A status conference was held in this court on March 3, 2006 and

8  all pending matters were continued because of Arnett's "Urgent

9  Motion".  By Order filed in the Ninth Circuit on March 17, 2006

10 and with this court on March 20, 2006, Chief Judge Schroeder

11 ruled: "The motion to recall the mandate is DENIED."  (Doc. 563).

12      **B.  <u>Effect on Arnett's Conviction</u>**.

13      Arnett contends that all proceedings in this court since

14 August 6, 2004 to date are void because this court did not obtain

15 jurisdiction over this criminal action until the mandate was

16 issued on September 23, 2005.

17      Rule 41, Federal Rules of Appellate Procedure, pertains to

18 the issuance of the mandate.[8]  Rule 41 provides:

19

20 _____

21      [7]Arnett appealed Judge Coyle's "Order Denying Defendant's
Motion to Dismiss Indictment Based on Double Jeopardy Clause" (Doc.
22 304).  By Memorandum filed on May 22, 2006 in the Ninth Circuit in
No. 04-10575, the Ninth Circuit affirmed Judge Coyle's ruling. *See*
23 2006 WL 1381514.  On June 5, 2006, Arnett filed a petition for
rehearing and rehearing *en banc*, which petition remains under
24 submission.
     [8]Arnett also refers the court to Rule 36, Federal Rules of
25 Appellate Procedure.  Rule 36 pertains to entry of judgment and
notice.  Rule 36 does not appear to have any relevance to the
26 resolution of the issues presented in Arnett's motion.

13

**(a) Contents.**  Unless the court directs that a formal mandate issue, the mandate consists of a certified copy of the judgment, a copy of the court's opinion, if any, and any direction about costs.

**(b) When Issued.**  The court's mandate must issue 7 calendar days after the time to file a petition for rehearing expires, or 7 calendar days after entry of an order denying a timely petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, whichever is later.  The court may shorten or extend the time.

**(c) Effective Date.**  The mandate is effective when issued.

**(d) Staying the Mandate.**

**(1) On Petition for Rehearing or Motion.**  The timely filing of a petition for panel rehearing, petition for rehearing en banc, or motion for stay of mandate, stays the mandate until disposition of the petition or motion, unless the court orders otherwise.

**(2) Pending Petition for Certiorari.**

**(A)** A party may move to stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court. ....

...

**(D)** The court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.

As noted *supra*, the Mandate issued by the Ninth Circuit Clerk's Office on September 23, 2005 and filed with this court on

14

September 28, 2005 is inaccurate and incomplete.  Arnett's position is that this court did not obtain jurisdiction until September 23, 2005 and that all proceedings in this case between August 6, 2004 and September 23, 2005 are void because the mandate did not issue until September 23, 2005.  If Arnett's legal position is correct, the mandate still has not been issued by the Ninth Circuit Clerk's Office pursuant to Rule 41 because the district court has not received from the Ninth Circuit's Clerk's Office "a certified copy of the judgment [and] a copy of the court's opinion" reversing and remanding Arnett's convictions of Section 924(c).  This fact negates any contention that Arnett's rights under the Speedy Trial Act have been violated because he was not tried within 70 days of the issuance of the mandate.  Arguably, Arnett's rights under the Speedy Trial Act have not accrued.  However, this fact does not negate his contention that all proceedings in this case since August 6, 2004 are void.

In arguing that this court did not obtain jurisdiction until September 23, 2005, Arnett refers to *United States v. Foumai*, 910 F.2d 617 (9th Cir. 1990).

In *Foumai*, the defendant was convicted of driving without insurance and driving with a suspended license by a United States Magistrate Judge.  The defendant appealed to the District Court, which reversed the conviction the suspended license conviction. Forty-eight days after the reversal order, the District Court sua sponte withdrew the reversal order and requested further

15

1  briefing.  Defendant appealed to the Ninth Circuit, alleging

2  double jeopardy.  The Ninth Circuit ruled that a legitimate

3  expectation of finality had attached to the District Court's

4  original order reversing defendant's conviction and reversed the

5  District Court.  In discussing the finality of judgments, the

6  Ninth Circuit noted in pertinent part:

7           Although the expiration of the time for
           appeal may signify finality in federal trial
8           courts, appellate courts must follow
           procedures for issuing judgments not required
9           of trial courts.  In the present case, the
           district court was sitting as a court of
10          appeals pursuant to 18 U.S.C. § 3401.  The
           legitimacy of an expectation of finality of
11          an appellate order depends on the issuance or
           not of the mandate required to enforce the
12          order.  We have stated that '[u]ntil a
           mandate is issued, a case is not closed.  The
13          parties may petition the court for a
           rehearing.'  *United States v. Ross*, 654 F.2d
14          612, 616 (9th Cir. 1981), *cert. denied*, 455
           U.S. 926 ... (1982).  The jurisdiction of the
15          court of appeals does not terminate until
           issuance of the mandate.  *See Sgaraglino v.*
16          *State Farm Fire & Casualty Ins. Co.*, 896 F.2d
           420 (9th Cir. 1990); *United States v. Rivera*,
17          844 F.2d 916, 921 (2nd Cir. 1988).  A court of
           appeals may modify or revoke its judgment at
18          any time prior to issuance of the mandate,
           sua sponte or by motion of the parties.
19          Thus, finality of an appellate order hinges
           on the mandate, as does a defendant's
20          expectation of finality.

21          Arnett further refers to *United States v. Rivera*, 844 F.2d

22  916 (2nd Cir. 1988).  In *Rivera*, the trial judge declared a

23  mistrial on March 16, 1986.  Seven speedy trial days ran between

24  that date and April 2, 1986, when defendants filed motions for

25  double jeopardy dismissal of the indictment.  The trial judge

26  denied those double jeopardy motions on April 22, 1986.

Defendants filed a notice of appeal from the denial of the double jeopardy motions on April 22, 1986.  The Second Circuit held that the time under the Speedy Trial Act was excludable under 18 U.S.C. §§ 3161(h)(1)(E) & (F).  Because seven speedy trial act days had run prior to the appeal, the issue before the Second Circuit is when the speedy trial clock resumed following the interlocutory appeal.  The Second Circuit held in pertinent part:

> In a case where the appellate court orders a new trial after conviction, it is the appeal that constitutes 'the action occasioning the retrial', and the 70-day period begins to run, according to § 3161(e), on the date the appeal becomes final.  In the situation at hand, however, an interlocutory appeal after the district court had declared a mistrial, the 70-day period had already started to run anew when the mistrial was declared, and the speedy trial act resumed on the date the exclusion allowed for an interlocutory appeal, § 3161(h)(1)(E), ended, *i.e.,* when the appeal became final.
>
> Defendants argue that the appeal became final on August 28, 1986, the date we issued our summary order affirmed Judge Walker's denial of their motions to dismiss.  Alternatively, they argue that the appeal became final on September 19, 1986, because Fed.R.App.P. 41 provides that the mandate of the appellate court 'shall issue 21 days after entry of judgment.'  If either date marked the end of the interlocutory appeal, defendants argue, more than 70 days would have elapsed before the trial began, causing a Speedy Trial Act violation.  The government argues that the clock resumed on the date when the mandate actually issued, September 26, 1986, leaving five days still available when the trial actually began.

844 F.2d at 920.  The Second Circuit noted that six circuits, including the Ninth Circuit in *United States v. Ross*, 654 F.2d

17

1  612 (9ᵗʰ Cir.), *cert. denied*, 454 U.S. 1090 (1981), 455 U.S. 926

2  (1982), have adopted a rule that for the purpose of Section

3  3161(e) an appeal becomes final on the date the mandate is

4  issued.   *Id*.   In following these six circuits, the Second Circuit

5  stated in pertinent part:

> A general explanation of what a 'mandate' is and how it issues in this circuit is a necessary starting point.  To begin, we decide cases either by opinion or by summary order.  On the 21ˢᵗ day from the date on which an opinion issues, the clerk of the appellate court files the mandate, which consists of a copy of the opinion, a judgment that has been drafted and signed by a clerk of the court, and any direction as to costs ... In the case of a summary order, a separate written judgment is not included in the mandate.  In either case the clerk of the court signs her name on a copy of the judgment or order that is stamped 'MANDATE' at the top of the first page and 'true copy' at the bottom of the last page.  The original copies of the judgment or order and the opinion are retained by the clerk's office, and the 'true copy', along with a second copy of the first page of the judgment or order, plus a copy of any opinion, is sent to the district court from which the appeal was taken.  The clerk records this event, which *is* the issuance of the mandate, by signing her name and the date on the docket card next to a notation indicating that the mandate has issued.

> After receiving the mandate, the district clerk signs the second copy and returns it to the circuit court clerk's office, where it is filed.  Once a month, the clerk's office sends to the clerk of each district court a list of all the mandates issued to that court during the month so that the district clerk can verify receipt of all the mandates that were sent.

> Although, prior to December 20, 1987, parties were not notified when a mandate issued, they could, and often did, call either our clerk's

office to ascertain whether the mandate had
issued or the district clerk to determine
whether it had been received.  In addition to
ascertaining when the mandate issues, a
diligent appellate attorney should check the
language of the judgment itself to insure
that it conforms to the order or opinion of
the appellate court.  *See* R. Martineau,
*Modern Appellate Practice,* § 17.1 (1983).

We are advised by the circuit clerk's office
that the mandate procedure has undergone re-
examination in recent months.  As a result,
the clerk's office has added the following to
the procedures for issuance of the mandate.
First, the copy of the judgment or summary
order that is sent to the district court, in
addition to being stamped 'MANDATE' and 'true
copy', will bear a sticker saying 'mandate
issued' and indicating the date of issuance.
Second, the attorneys for the parties will be
sent a copy of the mandate that bears this
sticker.  We trust that these additional
procedures will help to eliminate any future
confusion about when a mandate issues.

As our review of these procedures makes
clear, the subjective intent of the panel
deciding a particular case is irrelevant to
the fact of whether or not the mandate
actually issued.  Nor is the mandate deemed
issued merely upon the filing of an opinion
or summary order.  For the mandate to issue
there must be '[a] certified copy of the
judgment and a copy of the opinion, if any,
and any direction as to costs *** unless the
court directs that a formal mandate issue.'
*See* Fed.R.App.P. 41.  Since the clerk has
responsibilities for entering a judgment,
Fed.R.App.P. 36, and for taxation of costs,
Fed.R.App.P. 39(d), it may fairly be inferred
that the duty to issue the mandate
contemplated by Rule 41 is also a
responsibility of the clerk.

While a panel or judge may give directions
affecting the mandate, it is the clerk, not
the judges, who 'issues' it.  There is no
rule or formal authorization in this circuit,
or in any other circuit that we are aware of,
that provides for the issuance of the mandate

19

by court order rather than by action of the clerk. Nevertheless, appellants argue that because we expressed, in our summary order of August 28, 1986, what all parties and this court concede was most likely an erroneous belief that retrial was scheduled for September 8, 1986, we must have intended to revest jurisdiction in the district court immediately when the order issued. Appellants rest this argument in part on § 41 of the Second Circuit's Rules Supplementing the Federal Rules of Appellate Procedure. That section provides:

> In all cases in which an appeal from an order or judgment of the district court or a petition to review or enforce an order of an agency is decided in open court, the mandate shall issue forthwith unless the court otherwise directs. The mandate shall also issue forthwith in any case wherein the clerk enters an order dismissing an appeal or a petition to review or enforce an order of an agency for default in filings, as directed by an order of the court or a judge.

This supplementary rule does not, however, circumvent or make unnecessary the formal requirement that the clerk's office must execute certain concrete procedures which themselves constitute issuance of the mandate.

Simply put, jurisdiction follows the mandate. *See Ostrer*, 584 F.2d at 598 ('The effect of the mandate is to bring the proceedings in a case on appeal in our Court to a close and to remove it from the jurisdiction of this Court, returning it to the forum whence it came.') *accord ... Ross*, 654 F.2d at 616 .... For Speedy Trial Act purposes the same rule applies whether the case involves retrial following appeal or a pretrial interlocutory appeal ....

Because issuance of the mandate is an event of considerable institutional significance, particularly since enactment of the Speedy

20

1        Trial Act, we are unable to say, as
2        defendants would have us say, that the
    mandate 'issued' simply because it should
3        have been issued, or because the panel may
    have intended it to issue, or because the
4        statute commands it to issue.  We note that
    neither the Riveras nor Laguer called the
5        court's attention to the fact that the
    mandate was not issued on the 21st day, nor
6        did any party move for issuance of the
    mandate pursuant to Fed.R.App.P. 27, 41.  Had
7        they timely done so, the problem in this case
    might have been avoided.

8    844 F.2d at 920-921.

9      The United States responds that Arnett's contention that the

10   mandate did not issue until September 23, 2005 "is plainly wrong

11   and would not even be permitted under Federal Rules of Appellate

12   Procedure, Rule 41."  In so arguing, the United States relies on

13   *Bell v. Thompson*, ___ U.S. ___, 125 S.Ct. 2825 (2005).

14     In *Bell v. Thompson*, petitioner was convicted of first

15   degree murder and his death sentence was upheld on direct appeal.

16   He was denied state postconviction relief.  He then filed a

17   petition for writ of habeas corpus in the District Court for the

18   Eastern District of Tennessee, alleging ineffective assistance of

19   counsel by failing to conduct an adequate investigation into his

20   mental health.  The district court granted summary judgment on

21   the federal habeas claim for the state.  The Sixth Circuit Court

22   of Appeals affirmed.  Petitioner filed a petition for rehearing

23   which was denied.  However, the Sixth Circuit stayed the issuance

24   of its mandate pending disposition of petitioner's petition for

25   certiorari.  The Supreme Court denied certiorari on December 1,

26   2003.  On December 2, 2003, petitioner filed a motion in the

21

1   Sixth Circuit seeking to extend the stay of mandate pending

2   disposition of his petition for rehearing in the Supreme Court.

3   The Sixth Circuit granted the motion and "ordered that the

4   mandate be stayed to allow appellant time to file a petition for

5   rehearing from the denial of the writ of certiorari, and

6   thereafter until the Supreme Court disposes of the case."  On

7   January 20, 2004, the Supreme Court denied the petition for

8   rehearing, filing a copy of the order with the Sixth Circuit on

9   January 23, 2004.  The Sixth Circuit did not issue its mandate.

10  The state, under the impression that the federal habeas

11  proceedings had terminated, file a motion in state court to

12  schedule an execution date, which the state court set for August

13  19, 2004.  From February to June 2004, there were proceedings in

14  both state and federal court related to petitioner's competence

15  to be executed.  While this claim was still pending before the

16  federal district court, the Sixth Circuit on June 23, 2004 issued

17  an amended opinion in the petitioner's initial federal habeas

18  case, vacating the district court's judgment denying habeas

19  relief and remanding the case for an evidentiary hearing on

20  petitioner's ineffective assistance of counsel claim.  In so

21  doing, the Sixth Circuit relied on its inherent power to

22  reconsider its opinion prior to the issuance of the mandate.  The

23  Supreme Court granted certiorari, stating that "[a]t issue in

24  this case is the scope of the Court of Appeals' authority to

25  withhold the mandate pursuant to Federal Rule of Appellate

26  Procedure 41."  125 S.Ct. at 2830.  After quoting the provisions

of Rule 41, the Supreme Court held in pertinent part:

> Tennessee argues that the Court of Appeals was required to issue the mandate following this Court's denial of Thompson's petition for certiorari.  The State's position rests on Rule 41(d)(2)(D), which states that '[t]he court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed.'  This provision, the State points out, admits of no exceptions, so the mandate should have issued on the date that a copy of this Court's order denying certiorari was filed with the Court of Appeals, *i.e.,* December 8, 2003.
>
> The State further contends that because the mandate should have issued in December 2003, the Court of Appeals' amended opinion was in essence a recall of the mandate.  If this view is correct, the Court of Appeals' decision to revisit its earlier opinion must satisfy the standard established in *Calderon v. Thompson*, 523 U.S. 538 ... (1998). *Calderon* held that 'where a federal court of appeals *sua sponte* recalls its mandate to revisit the merits of an earlier decision denying habeas corpus relief to a state prisoner, the court abuses its discretion unless it acts to avoid a miscarriage of justice as defined by our habeas corpus jurisprudence.' *Id.,* at 558 ....
>
> Thompson counters by arguing that Rule 41(d)(2)(D) is determinative only when the court of appeals enters a stay of the mandate to allow the Supreme Court to dispose of a petition for certiorari.  The provision, Thompson says, does not affect the court of appeals' broad discretion to enter a stay for other reasons.  He relies on Rule 41(b), which provides the court of appeals may 'shorten or extend the time' in which to issue the mandate.  Because the authority vested by Rule 41(b) is not limited to the period before a petition for certiorari is denied, he argues that the Court of Appeals had the authority to stay its mandate following this Court's denial of certiorari and rehearing.  Although the Court of Appeals

23

1      failed to issue an order staying the mandate
      after we denied rehearing, Thompson asserts
2      that the court exercised its Rule 41(b)
      powers by simply failing to issue it.
3

4      To resolve this case, we need not adopt
      either party's interpretation of Rule 41.
      Instead, we hold that - assuming *arguendo*,
5      both that the Rule authorizes a stay of the
      mandate following the denial of certiorari
6      and also that a court may stay the mandate
      without entering an order - here the Court of
7      Appeals abused its discretion in doing so.

8 125 S.Ct. at 2831-2832.  The Supreme Court then stated its

9 reasons for finding an abuse of discretion.  Relevant to the

10 resolution of Arnett's motion is the following discussion:

11      Prominent among our concerns is the length of
      time between this Court's denial of
12      certiorari and the Court of Appeals' issuance
      of its amended opinion.  We denied Thompson's
13      petition for certiorari in December 2003 and
      his petition for rehearing one month later.
14      From this last denial, however, the Court of
      Appeals delayed issuing its mandate for over
15      five months, releasing its amended opinion in
      June.
16

17      The consequence of this delay for the State's
      criminal justice system was compounded by the
      Court of Appeals' failure to issue an order
18      or otherwise give notice to the parties that
      the court was reconsidering its earlier
19      opinion.  The Court of Appeals had issued two
      earlier orders staying its mandate.  The
20      first order stayed the mandate pending
      disposition of Thompson's petition for
21      certiorari.  The second order extended the
      stay to allow Thompson time to file a
22      petition for rehearing with this Court and
      'thereafter until the Supreme Court disposes
23      of this case.'  So by the express terms of
      the second order the mandate was not to be
24      stayed after this Court acted; and when we
      denied rehearing on January 20, 2004, the
25      Court of Appeals' second stay dissolved by
      operation of law.  Tennessee, acting in
26      reliance on the Court of Appeals' earlier

orders and our denial of certiorari and rehearing, could assume that the mandate would - indeed must - issue.  While it might have been prudent for the State to verify that the mandate had issued, it is understandable that it proceeded to schedule an execution date.  Thompson, after all, had not sought an additional stay of the mandate, and the Court of Appeals had given no indication that it might be revisiting its earlier decision.

This latter point is important.  It is an open question whether a court may exercise its Rule 41(b) authority to extend the time for the mandate to issue through mere inaction.  Even assuming, however, that a court could effect a stay for a short period of time by withholding the mandate, a delay of five months is different in kind.  'Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.' ... Without a formal docket entry neither the parties nor this Court had, or have, any way to know whether the court had stayed the mandate or simply made a clerical mistake ... The dissent claims 'the failure to notify the parties was likely due to a simple clerical error' on the part of the Clerk's office ... The record lends no support to this speculation.  The dissent also fails to explain why it is willing to apply a 'presumption of regularity' to the panel's actions but not the Clerk's ....

The Court of Appeals could have spared the parties and the state judicial system considerable time and resources if it had notified them that it was reviewing its original panel decision.  After we denied Thompson's petition for rehearing, Tennessee scheduled his execution date.  This, in turn, led to various proceedings in state and federal court to determine Thompson's present competency to be executed ... All of these steps were taken in reliance on the mistaken impression that Thompson's first federal habeas case was final.  The State had begun to 'invok[e] its entire legal and moral authority in support of executing its

25

judgment.' ....

The parties' assumption that Thompson's
habeas proceedings were complete was all the
more reasonable because the Court of Appeals'
delay in issuing its mandate took place after
we had denied certiorari.  As a practical
matter, a decision by this Court denying
discretionary review usually signals the end
of litigation.  While Rule 41(b) may
authorize a court to stay the mandate after
certiorari is denied, the circumstances where
such a stay would be warranted are rare ...
In the typical case, where the stay of
mandate is entered solely to allow this Court
time to consider a petition for certiorari,
Rule 41(d)(2)(D) provides the default: 'The
court of appeals must issue the mandate
immediately when a copy of a Supreme Court
order denying the petition for writ of
certiorari is filed.'

By providing a mechanism for correcting
errors in the courts of appeals before
Supreme Court review is requested, the
Federal Rules of Appellate Procedure ensure
that litigation following the denial of
certiorari will be infrequent.

125 S.Ct. 2832-2833.

Arnett replies that the United States' reliance on *Bell v.
Thompson* is misplaced.  Arnett contends that the position that
"the three-judge order is sufficient all by itself, and that it
is insignificant and irrelevant as to whether the mandate was
actually physically created and issued to the parties and the
district ... flys [sic] in the face of FRAP 41 and well-
established principles of statutory construction and *Thompson*
itself."  Arnett reiterates that the "mandate 'consists of a
certified copy of the judgment, a copy of the court's opinion, if
any, and any direction about costs.' *Fed. R.App.P. 41(a)*."  *Dils*

*v. Small*, 260 F.3d 984, 987 n.1 (9th Cir. 2001).  Although Arnett recognizes that Rule 41(d)(2)(D) plainly provides that "[t]he court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of mandate is filed", he argues that the "general statutory provision" set forth in Rule 41(d)(2)(D) "may not be used to nullify or to trump" the specific provision set forth in Rule 41(a).  *See Cal. Ex. Re. Sacramento Metro. Air Quality v. U.S.*, 215 F.3d 1005, 1013 (9th Cir. 2000)("It is fundamental that a general statutory provision may not be used to nullify or to trump a specific provision, irrespective of the priority of enactment.").  Arnett contends:

> This is especially true where FRAP 41 does not even make even a general or ambiguous statement, that could be construed by any stretch of the imagination, authorizing an order to issue a mandate as the equivalent of actually creating a mandate and then issuing it.  To hold otherwise would unconstitutionally render the mandatory provisions of FRAP 41(a) and (c) superfluous, void and insignificant.

In so arguing, Arnett notes that it is "'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).  Therefore, Arnett argues, this court has a duty to give effect to every clause or word in Rule 41(a) and (c) because the "issuance of the mandate is 'an event of considerable institutional significance.'" *Miles*

27

1  *v. Stainer*, 141 F.3d 1351, 1352 (9th Cir.1998), *citing United*

2  *States v. Rivera, supra*, 844 F.2d at 921.   Furthermore, because

3  Rule 41(a) defines the mandate and Rule 41(c) defines when the

4  mandate is effective, Arnett argues that the court must follow

5  these explicit statutory definitions, and not a general order

6  from the Ninth Circuit, citing *Stenberg v. Carhart*, 530 U.S. 914,

7  942 (2000)("When a statute includes an explicit definition, we

8  must follow that definition, even if it varies from that term's

9  ordinary meaning.").   Arnett refers to *Dils v. Small, supra*, 260

10 F.3d at 987 n.1.   In *Dils,* the Ninth Circuit's order denying a

11 certificate of appealability was lodged with the district court

12 on April 17, 1998 and a subsequent minute order provided "the

13 mandate of the Ninth Circuit Court of Appeals ... is hereby filed

14 and spread."   After noting that the order denying the COA was not

15 a mandate within the meaning of Rule 41(a), the Ninth Circuit

16 stated:

17              The verb 'to spread' as used in connection
                with mandates is a special judicial usage ...
18              In our usage it means to note on the district
                court case docket that mandate has issued.
19              An order of this court is merely 'lodged.'

20 Arnett contends that "[n]owhere on the docket did the clerk note

21 that the mandate was 'spread.'" Arnett further notes that Rule

22 41(a), (b), (c), and (d)(2)(D) all use the term "issue".   Noting

23 that the term "issue" is not defined in the Rule, Arnett relies

24 on the principle:

25              When a statute does not define a term, a
                court should construe that term in accordance
26              with its 'ordinary, contemporary, common

28

1          meaning.' ... 'To determine the "plain
           meaning" of a term undefined by a statute,
2          resort to a dictionary is permissible.

3 *Cleveland v. City of Los Angeles*, 420 F.3d 981, 989 (9th Cir.

4 2005), *cert. denied*, ___ U.S. ___, 126 S.Ct. 1344 (2006).  Arnett

5 notes that "issue" has been defined in Black's Law Dictionary 850

6 (8th Ed. 1999) as "to send or distribute officially" and in

7 Webster's New World Dictionary 718 (3rd Ed. 1988) as "put forth

8 and circulate; give out publicly or officially".  Arnett contends

9 that these definitions of the term "issue" require that the clerk

10 of the Ninth Circuit physically send out and distribute

11 officially a certified mandate to the parties and that nothing

12 less is sufficient, including "an order to issue a mandate that

13 is merely lodged on the appellate docket."  Arnett further argues

14 that the position of the United States is incompatible with the

15 language and history of Rule 41(c) that the "mandate is effective

16 when issued":

17          In this case, the government's view is that,
           when the court of appeals received the order
18         from the Supreme Court denying certiorari,
           and the order from the initial three-Judge
19         panel of the Court of appeals [sic], lifting
           the stay and ordering that the mandate should
20         issue forthwith, and, where the Clerk Wayne
           Price should have created and issued the
21         mandate, but did not, a final mandate was
           issued.  The necessary consequence of that
22         reading is that the mandate is effective when
           it <u>should have</u> issued under Rule 41(d)(2)(D).
23         That is directly contrary to the language of
           Rule 41(c), which makes the mandate
24         effective, not when it 'should' issue, but
           when it does issue.
25
26 Arnett further refers to the Minutes of the Meeting on the

29

1 Advisory Committee on Appellate Rules, reported at 1994 WL 880349

2 at *13-14:

3          Solicitor General Days had previously
           proposed that Rule 41 be amended to state
4          that a mandate is effective upon issuance.
           Judge Logan invited him to discuss his
5          proposal.  The Solicitor General noted that
           the time at which a mandate becomes effective
6          is not specified in Rule 41.  A mandate could
           be considered effective when it issues, when
7          it is received by the district court or
           agency to which it is sent, when it is
8          docketed, or when the court or agency acts
           upon it.  The effective date of the mandate
9          is especially important when a court of
           appeals reverses a district court order
10         granting an injunction.  The parties need to
           know when they can rely on the decision of
11         the court of appeal.  The fourth circuit has
           a local rule stating that the mandate is
12         effective when issued.  The Department of
           Justice believes that incorporating such a
13         provision in the national rule would be
           helpful.
14
           Judge Logan asked the Solicitor General
15         whether the language at lines 22 and 23 of
           the draft on page 14 of the Reporter's
16         memorandum would be sufficient.  That
           language stated: 'The court's mandate is
17         effective on the day the court issues it.'
           The Solicitor General responded
18         affirmatively.  Committee discussion resulted
           in amendment of the sentence to read as
19         follows: 'The mandate is effective when
           issued.'
20
           The Solicitor General stated that there is
21         often a delay in issuing the mandate.  The
           Department would prefer that the rule provide
22         that the mandate is effective on the date
           that the clerk should issue it, in accordance
23         with the rules, even if it is not issued on
           that date because of clerical delay.
24
           A member expressed opposition to that
25         position.  The mandate should be effective
           when issued, not when it should issue.  A
26         judge may delay issuance of the mandate.  If

1    a mandate is not issued on the date
     established by the rules and the approach
2    advocated by the Department of Justice were
     accepted, one would have to determine whether
3    the delay was the result of clerical delay or
     judicial intervention.  The effective time
4    should be the time of actual issuance.  Such
     an approach provides an easily applied bright
5    line rule.

6    A motion was made and seconded to amend to
     the rule to state that 'the mandate is
7    effective when issued.'  The motion was
     approved unanimously.
8
          Arnett further argues that the following entry on the Ninth
9
     Circuit's docket is void:
10
          8/6/04 Filed order (Stephen S. TROTT, Pamela
11        A. RYMER, Richard C. TALLMAN,):  On 6/7/04,
          the USSC denied cert in this case.  The stay
12        of the mandate issued on 2/11/04 is lifted.
          The aplt's motion to stay the mandate pending
13        the USSC's decision on his petition for
          rehearing is denied.  The mandate shall issue
14        forthwith. in 00-10170, 0030189 ....

15   In so contending, Arnett refers to a prior docket entry:

16        2/11/04 Filed order (Mary M. SCHROEDER):
          Appellant's motion to stay the mandate is
17        GRANTED. in 00-10170, 00-30189 ....

18   Because Judge Schroeder was acting on behalf of the *en banc* panel

19   when she granted the motion to stay, Arnett refers to Ninth

20   Circuit General Order 5.9, which provides:

21        A motion for stay of mandate in a case
          decided en banc shall be forwarded to the
22        author of the disposition, who shall dispose
          of the motion and then send all members of
23        the en banc court a copy of the motion and
          the disposition of the motion.
24
     Arnett complains that the three-judge panel who were assigned to
25
     his appeal before the petition for rehearing *en banc* was granted
26

                                   31

1  had no authority to issue that August 6, 2004 order lifting the

2  stay.  In so arguing, Arnett refers to *Scoop-Gonzalez v. I.N.S.*,

3  272 F.3d 1176, 1187 n.8 (9th Cir. 2001), *amended on other grounds*,

4  289 F.3d 599 (9th Cir.), *cert. denied*, 537 U.S. 947 (2002):

5          [F]ailure to raise an issue before an
           original appellate panel does not preclude an
6          *en banc* panel's jurisdiction over that issue.
           A court's decision to rehear a case *en banc*
7          effectively means that the original three-
           judge panel never existed.  This is why the
8          original panel disposition may not be cited
           the very minute that a court votes to rehear
9          a case *en banc*.  The *en banc* court does not
           review the original panel decision, nor does
10         it overrule the original panel decision.
           Rather, the *en banc* court acts as if it were
11         hearing the case on appeal for the first
           time.

12  Arnett further refers to *Kyocera Corp. v. Prudential-Bache*, 341

13  F.3d 987, 995 (9th Cir.2003), *cert. denied*, 540 U.S. 1098 (2004),

14  quoting *Summerlin v. Stewart*, 309 F.3d 1193 (9th Cir. 2002):

15  "'when a case is heard or reheard *en banc*, the *en banc* [court]

16  assumes jurisdiction over the entire case, *see* 28 U.S.C. § 46(c),

17  regardless of the issue or issues that may have caused any member

18  of the Court to vote to hear the case *en banc*.'"  Arnett contends:

19          In this case only Chief Judge Schroeder could
            lift the stay she had imposed.  Indeed, as a
20          well-established principle of stare decisis,
            one three-judge panel of the court of
21          appeals, especially a panel without
            jurisdiction to do so, cannot reconsider or
22          overrule an order of an <u>en banc</u> Panel to stay
            the mandate.
23

24  In so asserting, Arnett also refers to *Hart v. Massanari*, 266

25  F.3d 1155, 1170-1172 (9th Cir. 2001).

26      *Hart v. Massanari* does not address the issue being raised by

                                    32

Arnett in this section of his motion to dismiss. *Massanari* involved whether an attorney should be disciplined for citing an unpublished Ninth Circuit opinion in his opening brief.  In the cited portion of the opinion, the three-judge panel discussed the effect and importance of binding precedent, stating in pertinent part:

> ... Circuit law ... binds all courts within a particular circuit, including the court of appeals itself.  Thus, the first panel to consider an issue sets the law not only for all the inferior courts in the circuit, but also future panels of the court of appeals.
>
> Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting en banc, or by the Supreme Court.

266 F.3d at 1171.  Furthermore, nothing in the cases cited by Arnett stand for the proposition that the August 6, 2004 Order issued by the three-judge panel lifting the stay of the mandate issued by Chief Judge Schroeder of the *en banc* panel is void. Arnett cites no authority that holds or implies that the district court could ignore a mandate on this ground.  To take Arnett's position to its logical extreme, if the mandate had been issued and filed with this court in August 2004 as required by Rule 41(a), this court still would not have had jurisdiction. Arnett's position makes no sense and exalts form over substance. It is noted that a Memorandum and an Order were issued on December 23, 2003.  The Order was issued by the *en banc* panel. In that Order, the *en banc* panel stated that the "memorandum

33

disposition filed on April 24, 2003, which was withdrawn by this court's order of October 3, 2003, is hereby reinstated."  The Memorandum, which was reinstated by the *en banc* panel, was issued by the three-judge panel.  Consequently, it is arguable that the August 6, 2004 order lifting the stay of the mandate was properly issued by the three-judge panel.

Arnett further contends that the Supreme Court's order denying his petition for rehearing was "filed" in the Ninth Circuit on August 9, 2004.  Pursuant to Rule 41(d)(2)(D), "[t]he court of appeals must issue the mandate immediately when a copy of a Supreme Court order denying the petition for writ of certiorari is filed."  However, Arnett argues, the August 6, 2004 Order lifting the stay of the mandate issued on February 11, 2004 was entered three days before the Supreme Court's order was filed in the Ninth Circuit, thereby making the August 6, 2004 Order and the docket entry of August 6, 2004 that "MANDATE ISSUED" premature.

Arnett's analysis is flawed.  Rule 41(d)(2)(D) refers to the filing of the Supreme Court order denying the petition for writ of certiorari.  The Supreme Court denied Arnett's petition for writ of certiorari on June 7, 2004 and it is that denial which is referenced in the August 6, 2004 order lifting the stay of the mandate issued by Judges Trott, Rymer and Tallman.  The August 9, 2004 docket entry states: "Received letter from the Supreme Court dated 8/2/04 re: order denying petition for rehearing ...."  Therefore, the August 6, 2004 order lifting the stay of the

34

1  mandate was not premature as argued by Arnett.

2      No case has been located involving circumstances analagous

3  to those presented here.  The issue involved in *Bell v. Thompson*

4  is not present in this case.  As noted, the Ninth Circuit's

5  docket reflects the panel's order of August 6, 2004 that "[t]he

6  mandate shall issue forthwith. in 00-10170, 0030189" and that the

7  mandate issued on August 4, 2004.  There is nothing in this

8  action from which it may be inferred that the panel was

9  considering issuing an amended opinion as was the case in *Bell v.*

10 *Thompson*.  In fact, as the United States notes in opposition to

11 this motion, Arnett filed two interlocutory appeals from rulings

12 made by Judge Coyle after August 4, 2004.  On October 14, 2004,

13 Arnett filed an appeal to the Ninth Circuit from Judge Coyle's

14 October 5, 2004 denial of his Motion to Dismiss Indictment Based

15 on Double Jeopardy Grounds or To Transfer Action (Ninth Circuit

16 Case No. 04-10575).  Arnett applied to the Ninth Circuit for a

17 stay of the commencement of retrial pending resolution of this

18 interlocutory appeal, which application was denied by the Ninth

19 Circuit.  *See* Docs. 304, 306, 321.  In addition, on December 1,

20 2004, Arnett filed an appeal to the Ninth Circuit from Judge

21 Coyle's November 22, 2004 denial of his Motion for Return of

22 Wrongfully Collected Assessments and Court Costs (Ninth Circuit

23 Case No. 04-10650).  *See* Docs. 323, 328.  There is no indication

24 from the Ninth Circuit that these later appeals were improper

25 because the Ninth Circuit intended to amend or revise its

26 opinions in connection with this criminal action.  What appears

is that the Ninth Circuit's Clerk's Office failed to follow the procedures set forth in Rule 41 for the issuance of the mandate by failing to send a certified copy of the Ninth Circuit's decision to the Clerk of the Eastern District for filing in August 2004.  The Ninth Circuit's Clerk's Office was called by Judge Coyle's courtroom deputy in September 2004. The district court was told that the mandate had issued.  It is undisputed that Arnett, the United States, and the district court believed that the mandate had issued, not only because of the Ninth Circuit's docket entry but also based on oral representations made by members of the Ninth Circuit's Clerk's Office to Judge Coyle's staff.  To conclude under these circumstances that the trial court did not obtain jurisdiction as of August 6, 2004 and that all of the hundreds of hours consumed in voluminous pretrial proceedings, August 2005 jury trial, and extended and comples post-trial proceedings are void is to exalt form over substance; would defeat the reasonable expectations of all parties at the trial level who sought to proceed in good faith to carry out the orders of the court of appeal to retry the 924(c) counts, to resentence defendant on his affirmed bank robbery convictions, and to hold the retrial within the time required by law; and would result in making a mockery of justice.

The contention that the Ninth Circuit will conclude, given the totality ofcircumstances set forth above, that the mandate did not issue until September 23, 2005 and that all proceedings in this case between August 6, 2004 and September 23, 2005 are

1   void is unpersuasive, notwithstanding the recognition that

2   issuance of the mandate is "an event of considerable

3   institutional significance." *Miles v. Stainer*, *supra*, 141 F.3d

4   at 1350.  This is especially true when, it is arguable that the

5   mandate still has not issued with respect to the reversal and

6   remand of the Section 924(c) counts, by virtue of the failure of

7   the September 23, 2005 "mandate" to refer to and file with the

8   district court the relevent judgment of the court of appeal in

9   Case No. 00-10170, DC No. 1:95-CR-5287 OWW   The denial of

10  Arnett's "Urgent Motion" to recall or modify the mandate is an

11  indication of the Ninth Circuit's position.

12        In *United States v. Salerno*, 868 F.2d 524 (2nd Cir. 1989),

13  the defendants moved in the district court to dismiss the

14  indictment on double jeopardy grounds.  The motion was denied and

15  defendants filed an interlocutory appeal as authorized by *Abney*

16  *v. United States*, 431 U.S. 651 (1977).  The Second Circuit issued

17  an order on September 8, 1986 which stated:

18              Appellants Genaro Langella and Carmine
                Persico appeal from the denial of their
19              motions to dismiss the indictment against
                them on double jeopardy grounds.  The Court,
20              having rejected the contentions of
                appellants, and trial of the indictment
21              having been scheduled to begin on September
                8, 1986, it is
22
                ORDERED, that the order of the United States
23              District Court for the Southern District of
                New York, Richard B. Owen, *Judge*, be, and
24              hereby is, affirmed in all respects, a formal
                opinion to be issued by the panel at a later
25              date.

26  The contemplated formal opinion was issued on October 30, 1986,

37

and the mandate of the Second Circuit was issued on November 18, 1986.  The trial in the district court ended on November 19, 1986, when guilty verdicts were returned against all defendants. On appeal from their convictions, defendants, citing *United States v. Rivera, supra*, 844 F.2d 916, argued that, since the mandate did not issue until the virtual completion of their trial, the district court proceeded without jurisdiction as to them, as a result of which their convictions are void and they are entitled to a new trial.  In rejecting this argument, the Second Circuit stated in pertinent part:

> *Rivera*, however, interpreted a provision of the Speedy Trial Act which states that:
>
>> If the defendant is to be tried again following an appeal, ... the trial shall commence within seventy days from the date the action occasioning the retrial *becomes final*.
>
> ... *Rivera* held that in circumstances akin to those presented here, where an order was followed by a formal opinion and the mandate thereafter issued, the action of this court with respect to the appeal became 'final' within the meaning of section 3161(c) upon issuance of the mandate, in accordance with the rule adopted by the seven other circuits which had considered the issue ... *Rivera* ... distinguished the question presented by the prosecution of Persico and Langella in this case ..., which question we now address.
>
> Numerous circuit courts have ruled that a district court may retain jurisdiction to proceed with a trial, despite the pendency of a defendant's interlocutory double jeopardy appeal, where the appeal is found to be frivolous ....
>
> Persico and Langella contend, however, that

1    their double jeopardy appeal in *Langella* was
     not found frivolous, as this court in effect
2    certified by issuing a formal opinion of
     affirmance, so these cases have no
3    application here.  We disagree.  Clearly, in
     all these cases, (1) no mandate had issued
4    'restoring' jurisdiction to the district
     court, since trial was allowed to proceed
5    simultaneously with the pendency of the
     interlocutory appeal, and (2) the trial was
6    allowed to proceed because of the high
     likelihood, in view of the nature of the
7    appeal, that the district court's ruling on
     double jeopardy would be affirmed.  Here,
8    however, that likelihood hardened into a
     certitude when this court issued its order on
9    September 8, 1986 affirming the district
     court's denial of Persico and Langella's
10   double jeopardy motion.  Furthermore, the
     applicable 'divestiture of jurisdiction rule
11   is not based upon statutory provisions or the
     rules of civil or criminal procedure.
12   Instead, it is a judge made rule originally
     devised in the context of civil appeals to
13   avoid confusion or waste of time resulting
     from having the same issues before two courts
14   at the same time.' ... On the admittedly
     unusual facts here presented, we conclude
15   that the district court had jurisdiction to
     proceed with the trial of Persico and
16   Langella on September 8, 1986.

17   868 F.2d at 539-540.  However, in *United States v. DeFries*, 129

18   F.3d 1293 (D.C. Cir. 1997), the district court dismissed a mail

19   fraud count.  The United States filed an interlocutory appeal

20   challenging that dismissal.  On January 31, 1995, the District of

21   Columbia Circuit reversed the district court and reinstated the

22   mail fraud count.  Pursuant to D.C. Circuit Rule 41, the D.C.

23   Circuit withheld issuance of the mandate until seven days after

24   disposition of any timely petition for rehearing.  Three weeks

25   later, the United States moved for expedited issuance of the

26   mandate, pointing out that the district court was almost ready to

39

swear a jury.  The defendant filed an opposition the next day, as
well as a petition for rehearing and rehearing en banc.  Rather
than issuing the mandate, the D.C. Circuit ordered the United
States to respond to the petition for rehearing.  In the district
court, the parties and the court discussed whether the trial
could proceed in the absence of the mandate.  After the United
States cited *Salerno*, the district court empaneled and swore the
jury.  On March 1, after the trial had been underway for a week,
the D.C. Circuit issued its mandate and on April 7 denied the
petition for rehearing.  Following their conviction in the
district court, appellants argued that because the D.C. Circuit
had not issued its mandate until after the trial began, the
district court lacked jurisdiction to proceed on the mail fraud
count.  The District of Columbia Circuit ruled in pertinent part:

> The relationship between district court
> jurisdiction and the issuance of the appeals
> court mandate is clear and well-known: The
> filing of a notice of appeal, including an
> interlocutory appeal, 'confers jurisdiction
> on the court of appeals and divests the
> district court of control over those aspects
> of the case involved in the appeal.' ... The
> district court does not regain jurisdiction
> over those issues until the court of appeals
> issues its mandate ... Courts have carved out
> a few narrow exceptions to this rule, such as
> where the defendant frivolously appeals ...
> or takes an interlocutory appeal from a non-
> appealable order ....
>
> Asking us to create an additional exception,
> the government argues that because we had
> issued our opinion by the time trial began,
> proceeding to trial prior to the issuance of
> the mandate neither caused confusion nor
> wasted judicial resources and thus did not
> contravene the purposes of the general rule

1      on jurisdiction.  As it did in the district
court, the government relies primarily on
2      *Salerno* ....

3      Involving 'admittedly unusual facts' ...,
*Salerno* has no applicability to the case
4      before us today.  By clearly acknowledging
the trial was to start on the very same day
5      that it issued its order, the Second Circuit
led the district court into believing it had
6      jurisdiction to proceed with the trial.  We
gave no such message to the district court.
7      To the contrary, when the government moved
for expedited issuance of the mandate so that
8      the district court could proceed to trial as
scheduled, instead of immediately responding,
9      we directed the government to reply to
appellants' pending rehearing motions.  The
10     fact that one judge voted to rehear the case
*in banc* [sic] demonstrates that this court
11     was seriously considering the rehearing
motions.  Moreover, it is clear from the
12     February 14 colloquy that both the government
and the district judge clearly understood
13     that this court had not completed its
consideration of the issues raised in the
14     interlocutory appeal, and that there was at
least a serious question about the district
15     court's jurisdiction.  Unlike *Salerno*,
nothing had 'hardened into a certitude' at
16     the time the district court, choosing to
disregard the fact that our mandate had not
17     issued, proceeded to swear the jury and begin
the trial.  The district court thus lacked
18     jurisdiction over the ... mail fraud count
when it proceeded to trial on February 22.
19     We therefore reverse appellants' Section 1341
convictions ....

20

21     In reaching this conclusion, we fully
understand that appellants' trial took
22     several months, consuming thousands of hours
of court and lawyer time.  The mandate rule,
23     however, is clear, well-established, and
grounded in solid considerations of efficient
24     judicial administration.  Because
'jurisdiction is the power to act,' it is
25     essential that well-defined, predictable
rules identify which court has that power at
26     any given time ... The mandate rule prevents
the waste of judicial resources that might

1    result if a district court, prior to the
     issuance of the appeals court's mandate,
2    proceeds with a case, ruling on motions and
     hearing evidence, after which the appeals
3    court reverses its original decision on
     rehearing.  That we ultimately sustained the
4    district court's jurisdiction in this case is
     of no moment; district court jurisdiction
5    cannot turn on retrospective examination of
     appeals court action.  Where, as here, our
6    mandate had not issued, the district court
     lacked jurisdiction to proceed with trial
7    whether we later sustained its jurisdiction
     or not.  Fully aware that our mandate had not
8    issued, the district court choose to proceed
     with trial.  If the government wishes, the
9    district court must now rehear the case.

10   129 F.3d at 1302-1303.

11       Here, the circumstances in this case are closer to those

12   involved in *Salerno* than in *DeFries*. The Ninth Circuit ordered

13   that the mandate issue after the Supreme Court denied Arnett's

14   petition for rehearing and the Ninth Circuit's official docket

15   reflected that the mandate had issued.  No concern was expressed

16   by Arnett or the United States that the mandate had not issued

17   until after Arnett's retrial and conviction.  Although Judge

18   Coyle was concerned that the mandate had not issued, his

19   courtroom deputy, upon inquiry to the Ninth Circuit Clerk's

20   Office, was told that the mandate had issued. All parties then

21   proceeded in the good faith belief that jurisdiction was revested

22   in the district court.  No objection was ever raised by defendant

23   until after jury verdicts were returned in hius retrial. To hold

24   under these circumstances that the district court acted without

25   jurisdiction from August 6, 2004 to September 23, 2005, in

26   returning the defendant from prison for his retrial (or to the

42

present because of the incomplete mandate that was issued on

September 23, 2005), would defeat the purposes of the rule

respecting proceedings upon the issuance of the mandate, a judge-

made rule, which is designed to avoid confusion and waste of

judicial resources [9]

Arnett's motion for a speedy trial or to dismiss the

Indictment is DENIED.

**C.   <u>Arnett's Applications for Personal Subpoena and Subpoena</u> <u>Duces Tecum and Motion for Discovery</u>.**

Arnett also filed on December 6, 2005 an application for

authorization to issue a personal subpoena and a subpoena duces

tecum pursuant to Rule 17(b) and (c), Federal Rules of Criminal

Procedure, to Deputy Clerk Candace Pemillion , contending that

Ms. Pemillion's "testimony and the official United States Court

of Appeals file is necessary to conclusively establish the

underlying factual basis for defendant's motion to dismiss the

indictment with prejudice; that is, the Court of Appeals mandate

did not 'issue' ... until September 23, 2005.  In addition,

Arnett filed applications for subpoenas to Ninth Circuit Deputy

Appellate Clerk Wayne Price and to David Porter, who was Arnett's

appellate counsel.  With regard to Wayne Price, Arnett contends:

Deputy Clerk Wayne Price ('wp') entered on
the Court of Appeals docket ... on August 6,

[9]Because of the denial of Arnett's position that this court lacked jurisdiction from August 6, 2004 to September 23, 2005 (or to the present), discussion of Arnett's arguments that the Indictment must be dismissed for violation of the Speedy Trial Act is not necessary.

1        2004, that the 'MANDATE ISSUED,' but did not
    actually create and issue the mandate to the
2        district court or the parties.  An
    evidentiary hearing is necessary to establish
3        the truth of this allegation.

4    With regard to David Porter, Arnett contends:

5        A fact that is at issue is whether or not the
    Clerk of the Court of Appeals actually
6        created and then issued an earlier mandate on
    August 6, 2004.  The official appellate file
7        and the district court file is [sic] void of
    an August 6, 2004 mandate.  In addition,
8        Federal Public Defender, David Porter, did
    not receive a copy of an August 6, 2004
9        mandate from the Court of Appeals, and the
    file in his possession is also void of such a
10       mandate.

11   By Order filed on May 16, 2006 (Doc. 571), the United States was

12   ordered to respond to these requests for subpoenas and to

13   Arnett's request for an evidentiary hearing.

14       In its response (Doc. 581), the United States argues that

15   the requested subpoenas and the evidentiary hearing are not

16   necessary.  With regard to the subpoenas to the Ninth Circuit

17   court clerks, the United States argues that the official record

18   from the Ninth Circuit and in this court is clear and that the

19   Ninth Circuit clerks, even if they remember what was or was not

20   done, cannot add to the record.  The same is true with regard to

21   the subpoena to David Porter.  With regard to the request for an

22   evidentiary hearing, the United States contends that none is not

23   required because the dockets of the Ninth Circuit and this court

24   as well as the various orders and rulings speak for themselves.

25       Arnett's requests for subpoenas and an evidentiary hearing

26   are DENIED.  There is no question that the Ninth Circuit Clerk's

44

1  Office did not issue a mandate consisting "of a certified copy of

2  the judgment, a copy of the court's opinion ... and any direction

3  about costs" as set forth in Rule 41(a) in August 2004.  There is

4  also no question that the mandate as described in Rule 41(a) was

5  not filed with the district court in August 2004.  These facts

6  are undisputed and the issue before the court is their legal

7  effect.  As noted, Judge Coyle's courtroom deputy made a

8  telephone call to the Ninth Circuit Clerk's Office because of the

9  concern that the mandate had not issued and was told that the

10  mandate had issued.  This is consistent with Arnett's declaration

11  quoted above that he stated in a pleading filed with this court

12  that the mandate had issued because the Ninth Circuit Clerk's

13  Office told him that it had.  There is no reason to further delay

14  proceedings in this action for an evidentiary hearing under these

15  circumstances. The hearsay asssertions and opinions of the

16  appellate Court clerks would not add any helpful admissable

17  evidence. Arnett's requests for the subpoenas and an evidentiary

18  hearing are denied.

19      Arnett has also filed a motion for discovery "permitting

20  discovery, if they even exist, of the August 6, 2004 mandates

21  from the ... Ninth Circuit ... in the possession of the United

22  States Attorneys Office."

23      Because it is clear from the record that the Ninth Circuit

24  Clerk's Office did not issue a mandate described in Rule 41(a) in

25  August 2004, there is no need for the requested discovery and

26  Arnett's motion is DENIED.

1    **D.  Application for Publication**.

2       Arnett has filed an application that any decision resolving

3  this motion to dismiss be published pursuant to Rule 83-171,

4  Local Rules of Practice.  (Doc. 536).

5       Rule 83-171 has nothing to do with the publication of

6  decisions in Federal Supplement 2nd.  Rule 83-171 provides:

7              There is no official newspaper for the
               Eastern District of California.  In each
8              instance in which publication of any
               document, notice or other matter is required
9              or permitted, the Court shall designate by
               order the appropriate newspaper or other
10             vehicle for publication.  In seeking such
               designation, counsel shall file a motion
11             proposing the place and manner of
               publication, setting forth such information
12             was the language to be published, the
               frequency of publication, the reasons
13             underlying selection of the proposed vehicle
               of publication, and all other relevant
14             matters.

15      Arnett's request for publication is DENIED.  A district

16 court does not make the law.  Any publication of the resolution

17 of the issues raised by Arnett is better left to a higher court

18 that possesses the authority to make law.

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

46

1    **ACCORDINGLY,** as set forth above:

2    1.   Arnett's motion for a speedy trial or to dismiss the

3         Indictment (Doc. 524) is **DENIED;**

4    2.   Arnett's request for discovery (Doc. 564) is **DENIED;**

5    3.   Arnett's requests for subpoenas (Docs. 523, 575, 577)

6         are **DENIED;**

7    4.   Arnett's application to publish decision (Doc. 536) is

8         **DENIED.**

9

10   **IT IS SO ORDERED**

11   **Dated: July 20, 2006**              **/s/ Oliver W. Wanger**
                                    **UNITED STATES DISTRICT JUDGE**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                    47